## D. ROSENBAUM ET AL. *v.* MERIDIAN NATIONAL BANK.

1. APPLICATION OF PAYMENT. *Absence of agreement. Debtor may direct application.*

> Where a bank has procured an attachment, and garnisheed the proceeds of fire insurance policies of its debtor to enforce the payment of certain promissory notes of the latter, held by it, among which is a note upon which third persons are liable as sureties or co-makers, and the debtor transfers to the bank some of the policies, in consideration of its release of the garnishment as to the others, and as collateral security for his entire indebtedness, the debtor, in the absence of any agreement as to the manner in which the proceeds of the policies so transferred shall be applied, may, after such transfer and before collection by the bank, and although then insolvent, direct their application to the payment of the note on which such third persons are liable.

2. SAME. *Instructions.*

> An instruction that is wholly unsupported by the evidence is misleading and erroneous, and one that makes the secret purpose of one party to a transaction, not induced by or made known to the other, a controlling factor in the controversy, is equally erroneous.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

This was an action brought by the Meridian National Bank to collect the balance alleged to be due on a note for $1,500, of which the appellants were co-makers with one R. Kahn, a married woman, and the wife of M. Kahn, who carried on for her the mercantile business in which she had been engaged up to the twenty-third of February, 1894, when her stock of goods was destroyed by fire. At the time of the fire, her stock was insured in two agencies—the Lloyd agency and the Kuling agency—and she was indebted to the bank, in addition to the note above mentioned, which was then due, on certain smaller promissory notes, the greater part of which were not due, in the

sum of about $800. It seems that, on the day after the fire, J. H. Wright, the vice president of the bank, called on M. Kahn to assign the policies of insurance for the protection of the bank's debt. Kahn did not consent to the proposition, and the bank procured an attachment, and garnisheed the proceeds of the policies in the hands of the insurance companies. Afterwards, on the same day, Kahn, on behalf of his wife, consented to transfer, and did transfer, to the bank a part of the policies as collateral security for the amount due to it, in consideration of the bank's release of the garnishment as to the other policies. He testified that he then, and several times afterwards, before collection by the bank, directed that the proceeds of the policies so transferred should be first applied to the payment of the $1,500 note. Wright, who represented the bank, the other party to the transaction, did not deny, when testifying, that such direction was given before the bank collected the $1,100 of proceeds eventually realized on the policies in August, 1894, at which time some of the notes still remained unmatured, but denied that any such direction was given at the time of the transfer, and stated that there never was any agreement between Kahn and himself as to how the proceeds were to be applied by the bank. He detailed the mental process by which he reached the conclusion that the transaction resulting in the transfer of part of the policies, and the release of the garnishment as to the others, would protect the bank by enabling it to apply the insurance money realized on those transferred to the unsecured notes, and to hold the appellants, who are entirely solvent, for such balance as might remain due on the $1,500 note.

The defendants plead payment, and, with the other undisputed payments made thereon, the $1,500 would have been fully satisfied had the $1,100 of insurance money been applied thereto. The question in controversy was, therefore, whether or not the $1,100 should have been appropriated to the payment of the $1,500 note.

R. Kahn was shown by the evidence to be insolvent. The court gave the following instructions for the plaintiff: "(2) If, in February last, Kahn being insolvent, her stock of goods having been destroyed by fire, the Meridian National Bank, to whom she owed a $1,500 note, with D. Rosenbaum & Sons security, and also certain other notes, unsecured, ran an attachment upon the insurance owing to her on her stock of goods so destroyed, which was sufficient to cover both the secured and the unsecured indebtedness, and that Kahn proposed to the bank to release a part of the insurance, and to take an assignment of the balance, to be collected by it and applied to her indebtedness, and that the bank, recognizing that the amount assigned would be sufficient to pay the unsecured debt, and that the name of D. Rosenbaum & Sons furnished sufficient security for the $1,500 note, and that the bank, in view of said fact, acceeded to the request, then the jury are told that, after such proposition was agreed to and acted upon by the bank, Kahn could not thereafter refuse to comply with such agreement. (3) If the jury believe, from the evidence, that Kahn induced the bank to understand that the proceeds of the insurance policies transferred to it by him were to be applied to the indebtedness of Kahn alone, and not on the indebtedness secured by the sureties of D. Rosenbaum & Sons, and that the bank dismissed the attachment suit by reason of said inducement of Kahn, then Kahn could not, after the dismissal of said attachment, direct the application of the funds of the insurance policies to the payment of the indebtedness signed and secured by D. Rosenbaum & Sons."

There was a verdict in favor of the bank for the balance due on the $1,500 note, and D. Rosenbaum & Sons appealed from the judgment rendered thereon.

*Cochran & Bozeman*, for the appellants.

1. The second instruction is without application to the evidence, and grossly misleading. It admonishes the jury of the

duty resting upon Kahn to comply with some agreement, the existence and nature of which is not disclosed either in the evidence or the instruction itself, and endeavors to make the secret cogitations of the bank officer, Wright, in respect to the efficacy of the transaction as a means of protecting the bank, operate as an estoppel, though not induced by or made known to Kahn.

2. The third instruction is erroneous, for the reason that there is not a word of evidence in the record even tending to show that Kahn made any such proposition to the bank as that mentioned, that he in any way "induced the bank to understand that the proceeds of the insurance policies transferred were to be applied on the indebtedness of Kahn alone, and not on the debt secured by D. Rosenbaum & Sons," or that the bank dismissed its attachment suit by reason of such inducement as stated in said instruction. It is error to charge the jury upon facts hypothetically stated in the instruction, if there be no evidence before them tending to show their existence, although the instruction may be right as an abstract proposition of law. *Garnett* v. *Kirkman*, 33 Miss., 389; *McIntire* v. *Kline*, 30 *Ib.*, 361; *Greenwade* v. *Mills*, 31 *Ib.*, 464; *Ivy* v. *Walker*, 58 *Ib.*, 253; *Newman* v. *Railroad*, 64 *Ib.*, 115; *Collins* v. *State*, 71 *Ib.*, 691.

3. The direction to apply the insurance money to the $1,500 note having been given by Kahn long prior to collection by the bank, or any effort on the bank's part to otherwise apply it, and the transfer being for the security of Mrs. Kahn's general indebtedness, the proceeds of the policies will be treated as having been appropriated to the $1,500 note.

If, as contended by the appellee, no appropriation was made by either party when the policies were transferred and delivered, the bank was precluded from making the appropriation thereafter over the protest, and contrary to the repeated demands, of Kahn; and, no appropriation having been made by either party, the law will make the appropriation, and also

make it in the manner most beneficial to the debtor. The refusal of the court to grant appellant's third, fourth, fifth and sixth instructions is antagonistic to the above statement of the law, and is considered erroneous. *Dennis* v. *Jones*, 31 Miss., 606; *Wooten* v. *Buchanan*, 49 *Ib.*, 389: De Colyar on Guaranties, p. 429; *Poindexter* v. *LaRoche*, 7 Smed. & M., 699; *McLaughlin* v. *Green*, 48 Miss., 205; *Neal* v. *Allison*, 50 *Ib.*, 177; *Windsor* v. *Kennedy*, 52 *Ib.*, 164.

After the controversy had arisen, and after Kahn had repeatedly demanded that the proceeds be applied to the payment of the note in suit, the bank had no right to make any other appropriation of them. *United States* v. *Kirkpatrick*, 9 Wheat., 720; *Robinson* v. *Doolittle*, 12 Vt., 249; *Milliken* v. *Tufts*, 31 Me., 500; *Lazarus* v. *Friedheim*, 51 Ark., 371.

The bank's witnesses say that, from the transfer of the policies until August 14, 1894, nearly six months, they were held by the bank as collateral security for all of Mrs. Kahn's notes. While so held, the policies were collected, converted into money, and, if no appropriation had been made, as the bank's witnesses show, then the rule is that the proceeds must be applied to all the notes past due equally, notwithstanding the fact that there may be an accommodation indorser on one of them, and the creditor cannot apply the money differently. *Parker* v. *Mercer*, 6 How. (Miss.), 320; *Gage* v. *Iler*, 5 Smed. & M., 410; *Wooten* v. *Buchanan*, 49 Miss., 386. Yet the legal effect of the verdict is a permission to the creditor, under the circumstances stated, to apply the proceeds of the general security to the full payment of some of the notes to the exclusion of others of prior maturity.

*Walker & Hall*, for the appellee.

We concede, as a general proposition, that the debtor has the right to direct as to which of several debts a payment made by him shall be applied. But there are many exceptions to the rule. For illustration, we cite *Gwin* v. *McLean*, 62 Miss., 121;

*Vaughn* v. *Powell*, 65 *Ib.*, 401; *Hiller* v. *Levy*, 66 *Ib.*, 30.   It is further true that the rule has no application where the debtor is estopped from invoking it.   Here was an insolvent merchant whose entire stock in trade was destroyed by fire.   Nothing was left except the insurance on the property destroyed.   The bank was solicitous.   Why?   Because of an indebtedness amounting to several hundred dollars, unsecured, and which would be lost unless the said insurance money could be reached.   The bank evidently did not desire to attach, for its vice president sought Mr. Kahn and then the debtor's brother, and asked his assistance in the premises.   The brother was willing to give his assistance, provided the bank would apply the money to the $1,500 note.   This proposition Mr. Wright declined to assent to.   He then sought out the husband of the debtor and submitted a like proposition to him, but he said he "wanted to consider the matter—to advise about it."   Thus failing in the effort to procure the protection desired, a writ of attachment was issued and all the insurance levied on, enough to pay both the secured and the unsecured notes.   Then the tables shifted. Kahn and Rosenbaum sought the release of a part, proposing to transfer the insurance in the Lloyd agency if the bank would release that in the Kuling agency.   Now, bear in mind that Wright had already declined to accept a transfer on condition that the proceeds should be first applied to the secured debt. Bear in mind, further, that Kahn and Rosenbaum were operating and conferring together in the negotiations from the start. Evidently they believed that the bank felt some hesitancy about attaching, or the proposition would not have been made to transfer only enough to pay a part, such part to include the secured debt.   Taking all the negotiations together, the bank emphasized its unwillingness to take an assignment upon any such conditions as would prefer the secured debt and thus entail a loss of the unsecured, or any part of it.   So, when the attachment was found to have been issued and levied, Kahn and Rosenbaum made a joint effort to procure a release of a

part, agreeing unconditionally to transfer that in the Lloyd agency. The insurance in both agencies was sufficient to pay the unsecured and about $300 on the secured. Mr. Wright, the bank's vice president, says: "Feeling that we were secure in the signature of D. Rosenbaum & Sons to that $1,500 note, upon the importunities of Mr. Kahn we released the attachment in the Kuling agency." It was the purpose of the bank not to lose one cent of the indebtedness, and there was no solicitude about the part secured by the signature of D. Rosenbaum & Sons. And, says Mr. Wright, "The Kuling insurance would not have been released on condition the part retained should be applied first to the $1,500 note."

Both Kahn and Rosenbaum knew that the only concern of the bank was about the unsecured notes. And they further knew that the negotiations for an assignment of a part of the insurance had reference to protecting the unsecured debt, and they further knew that the attachment was sued out for that purpose, and that alone. The bank declined to entertain any proposition looking to the payment of the secured to the defeat of the unsecured debt. Such being the case, when Kahn came forward after the levy, and when the bank was now safe, and proposed to transfer the insurance in the Lloyd agency, if the bank would release that in the Kuling agency, such a proposition necessarily implied an accession on his part to the terms of the bank—to wit: that he should transfer enough to protect the unsecured notes. And, now, after the bank has accepted that proposition, and released the other insurance, and changed its status, can Kahn or Rosenbaum & Sons be heard to insist upon the application of the insurance thus retained, to the secured notes, to the defeat and loss of the unsecured? Certainly not, without restoring the bank to its antecedent status.

2. We recognize a marked conflict between the testimony of Mr. Wright, on the one hand, and of Kahn and Mose Rosenbaum, on the other, touching the alleged assent on the part of Mr. Wright, before transfer, to the application of the proceeds

of the insurance policies, when collected, to the secured debt. We deem it unnecessary on this point to say more than that this issue was fairly presented to the jury, and by them determined in favor of the plaintiff.

COOPER, C. J., delivered the opinion of the court.

We have searched in vain for evidence in this record on which the third instruction given for the plaintiff can rest.

Wright, the vice president of the bank, with whom the negotiations were had, distinctly states that there was no understanding prior to the release of the attachment he had sued out against Kahn as to how the proceeds of the policy assigned to the bank by Kahn should be applied (record, page 13), and there is nothing in the evidence pointed out by counsel for the bank, or which our own examination has disclosed, tending to show either that Kahn induced the officers to believe, or that they did believe or were justified in believing, that the proceeds of the policy were to be applied to the unsecured debts of Kahn.

The second instruction is erroneous, because it makes the secret purpose and understanding of the officers of the bank, which were not induced by or known to Kahn, a controlling factor in the controversy.    Under this instruction the right of the defendant would be measured by the thought of another, and it was quaintly said by Brian, C. J., several hundred years ago, "It is trite law that the thought of man is not triable, for even the devil does not know what the thought of man is." Pollock on Contracts, p. 2, note *a.*

It is a conceded fact that before the policy was realized on, Kahn instructed the bank to apply its proceeds, when collected, to the credit of the note sued on, and we find nothing in the record which excluded him from the right of having the payment applied according to his wishes.    If it be accepted as true, as to which the evidence is not at all clear, that the bank had attached Kahn, and had caused garnishments to be served against insurance companies indebted to the defendant in sums

aggregating the amount due the bank, and dismissed the garnishments as to some of these companies in consideration of the assignment of some of the policies in other companies, it would not follow necessarily, nor probably, that the agreement was made because the bank had the security of Rosenbaum & Sons for a part of the debt due by Kahn.   It may be that the agreement was entered into because the bank knew it could not, or doubted its ability to, maintain its action.

On the facts as disclosed by the present record, the defendants were entitled to a peremptory instruction.

*Reversed and remanded.*

*Walker & Hall*, for the appellee,

Filed a suggestion of error, in which they called attention to the fact that a judgment had been recovered against Mrs. Kahn on the note in controversy prior to the beginning of this suit, and that, on the trial, the action was dismissed as to her, and judgment recovered against D. Rosenbaum & Sons alone.   In connection with this, it was further pointed out that, according to the testimony of J. H. Wright, one of that firm had sought Wright's consent to an application of the proceeds of the transferred policies to the $1,500 note, before the same had been transferred or the garnishment discharged, and that Wright gave his consent to the proposition.   On this it was argued that, when Kahn and Rosenbaum afterwards came forward, and the transfer was made and the garnishment dismissed, without any mention of how the money was to be applied, there was at least an implied understanding that the money was to be appropriated to the unsecured notes, and D. Rosenbaum & Sons were estopped to insist on any other application.

It was also contended that, the policies having been transferred as collateral security for the entire indebtedness, the bank acquired absolute dominion over the proceeds for such purpose, and, by its acceptance of the transfer, and having treated the policies as collateral to the unsecured notes, six of which were already past due, it had the right to apply the pro-

ceeds to that part of the indebtedness, in the absence of any direction to the contrary cotemporaneous with the transfer.

*Suggestion of error overruled.*